**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANGELA GURZI,**

       **Plaintiff,**

**v.**                                                      **Case No:   6:19-cv-823-Orl-31EJK**

**PENN CREDIT, CORPORATION,**

       **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 35) filed by the Defendant, Penn Credit Corporation ("Penn Credit"), the response (Doc. 52) filed by the Plaintiff, Angela Gurzi, and Penn Credit's reply (Doc. 53). In resolving these motions, the Court has considered the notices of supplemental authority (Docs. 40, 56) filed by both parties and Penn Credit's response thereto (Doc. 58).

    **I.**    **Background**

Gurzi is suing Penn Credit, a debt collection agency, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. As part of its debt collection practice, Penn Credit contracted with VoApps, Inc. ("VoApps") to deliver voicemail messages through VoApps' "unique delivery technology," which is known as DirectDROP Voicemail ("DDVM"). (Doc. 35 at 2). Specifically, VoApps' DDVM technology delivers a prerecorded message to a targeted individual's voicemail platform without directly dialing the target's cell phone number or otherwise causing her handheld device to ring. (*See id.*). Instead, using the target's cell phone number as an identifier, the technology "drops" a prerecorded message directly into the target's voicemail platform, which

causes her to receive a message-waiting notification as though she received a normal voicemail. (*See* David King Decl., Doc. 35-1, ¶¶ 26, 30; *see also* Angela Gurzi Decl., Doc. 52-1, ¶ 6).

In other words, the DDVM technology essentially provides VoApps customers with a backdoor way to deliver prerecorded voicemail messages to a target's cellular device without directly using the cellular network.

When describing how the technology operates, David King, the original founder of VoApps, stated:

> The [adaptive signaling technology ("Adapti-Sig")] that delivers DDVM bypasses the traditional way of leaving voicemail messages for consumers. Instead of a call being made from Adapti-Sig to a cellular handset, the technology only makes a call between the Adapti-Sig servers and the servers comprising the voicemail service provider's voicemail platform, each of which are owned by business operators. This call is a landline-to-landline connection, a business-to-business connection that VoApps pays for at business class rates . . . .
>
> DDVM does not access any part of the RAN[1] portion of the mobile telephone network, which is required to connect to or communicate with a cell phone. Instead, using the patented technology, DDVM establishes only a landline connection between two business class numbers for which VoApps pays business class rates. Once that connection is established, the message is deposited into the voicemail service provider's platform for the consumer to retrieve and listen to at the consumer's convenience, should he or she elect to do so.

(David King Decl., Doc. 35-1, ¶¶ 28, 30(b)).

On April 30, 2019, Gurzi filed her Class Action Complaint (Doc. 1). She alleges that Penn Credit violated the TPCA by placing automated calls to the class members' cellular telephones using its predictive dialer and/or prerecorded or artificial voice without the consent of the called party. (Doc.

---

[1] "The Radio Access Network ('RAN') segment of the [telephone] network contains the transmission equipment for the cellular network. The RAN includes the familiar cell towers and their radio transmission equipment, as well as consumers' actual cellular phones and mobile devices." (David King Decl., Doc. 35-1, ¶ 15(a)).

1 at 4). By way of the instant motion, Penn Credit argues that its use of VoApps' DDVM technology does not fall under the TCPA.

## II.     Standard of Review

Courts may grant summary judgment "[w]hen the only question a court must decide is a question of law." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). A court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 826–27 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324–25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").

**III.    Analysis**

The TCPA prohibits, in pertinent part, the making of "any call … using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service" without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). "To state a claim under the TCPA for calls made to a cellular phone, a plaintiff must allege that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012) (citations omitted).

Penn Credit's primary argument is that it did not call a "number assigned to a . . . cellular telephone service."[2] Specifically, Penn Credit alleges that "the message delivered on behalf of Penn Credit was delivered by landline—not cellular—service" and, therefore, Gurzi's TCPA claim must fail "based on the plain language of the statute."[3] (Doc. 35 at 4–5).

There is a presumption that, in drafting a statute, Congress said what it meant and meant what it said. *Am. Bankers Ins. Grp. v. United States,* 408 F.3d 1328, 1332 (11th Cir. 2005). Indeed, "[t]he first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1167 (11th Cir. 2003) (internal quotations and citation omitted). Words carry their ordinary meaning, unless otherwise defined. *Am. Bankers Ins. Grp.,* 408 F.3d at 1332. If Congress

---

[2] For purposes of this motion, Penn Credit "assumes, but does not admit, that the communication is a 'call' and that it is vicariously liable for the calls." (Doc. 35 at 1 n.1).

[3] The Court notes that, in 2014, VoApps filed a petition with the FCC requesting the FCC to determine that VoApps' DDVM technology does not fall under the TCPA. (Doc. 52 at 7). However, after an *ex parte* meeting with the FCC, VoApps withdrew its petition. (*Id.*).

has used clear statutory language, a court need not consider extrinsic materials, such as legislative history, and certainly should not derive from such materials a meaning that is inconsistent with the statute's plain meaning. *Shotz,* 344 F.3d at 1167. The only exception is that "courts may reach results inconsistent with the plain meaning of a statute 'if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd.'" *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1228 (11th Cir. 2001) (citation omitted).

Here, Penn Credit's use of direct-to-voicemail messages falls within the plain language of the TCPA. In an attempt to elevate form over substance, Penn Credit urges the Court to examine the phrase "any telephone number assigned to a . . . cellular telephone service" in isolation.[4] But, the Court cannot consider that phrase in isolation; rather, it must review "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *SEC v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017) ("To determine the plain meaning of a statute or regulation, we do not look at one word or term in isolation, but rather look to the entire statutory or regulatory context.") (citations omitted).

Courts (including this one) have consistently held that calls resulting in voicemail messages are subject to the TCPA. *See Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 6:19-CV-196-ORL-31, 2019 WL 2567971 (M.D. Fla. June 21, 2019) (collecting cases); *Saunders v. Dyck O'Neal, Inc.,* 319 F. Supp. 3d 907, 909–10 (W.D. Mich. 2018) (collecting cases). Additionally, the FCC has affirmed that "a telephone number is assigned to a cellular telephone service, for the purposes of the TCPA, if the number is currently being used in connection with that service." *In re Rules &*

---

[4] Specifically, Penn Credit argues that "to make any call" and "to any telephone number assigned to a . . . cellular service" are two distinct elements of the TCPA that ought to be analyzed separately. (*See* Doc. 53 at 2, 3 n.9). However, reading these two phrases together, in order to provide context for the phrase at issue here, does not render any part of the statute superfluous or otherwise misinterpret the statute.

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 FCC Rcd. 3788, 3807 (2005). However, to better understand what Congress meant when it used the phrase "any telephone number assigned to a . . . cellular telephone service," it is necessary to consider how such a number is "called."

The TCPA does not define "call;" therefore, the term must be interpreted based on its ordinary meaning. In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the Ninth Circuit analyzed the "ordinary, contemporary and common meaning of the verb 'to call'" and determined that "call" can be defined as "to communicate with or try to get into communication with a person by telephone."[5] *Id.* at 954–55. Using this definition, direct-to-voicemail messages fall within the plain language of the TCPA. Though VoApps' technology is able to deliver a prerecorded voicemail message without connecting with Gurzi's handheld device, it is clear that Penn Credit's ultimate goal in using the DDVM technology was to engage Gurzi with their prerecorded message through the voicemail platform associated with her cell phone number.[6] Because Penn Credit clearly attempted to "get into communication" with Gurzi via the voicemail platform that is directly connected to her "telephone number assigned to a . . . cellular telephone service," Penn Credit's conduct falls under the TCPA.

---

[5] In *Satterfield*, the Ninth Circuit analyzed whether "call" could apply to text messages under the TCPA. *Satterfield*, 569 F.3d at 951–54. After considering the dictionary definition of "call," the court stated: "This definition suggests that by enacting the TCPA, Congress intended to regulate the use of an [Automatic Telephone Dialing System] to communicate or try to get into communication with a person by a telephone." *Id.* at 953–54. The Ninth Circuit also examined the purposes of the TCPA and ultimately concluded that the FCC's interpretation that both voice messages and text messages were covered by the TCPA was reasonable and entitled to deference. *Id.* at 954.

[6] When asked about the purpose of using DDVM in his deposition, David King stated: "I think it would depend on the client. You know, I think in the case with Penn Credit, it sounds like they're wanting to collect the debt or *connect with – communicate with the consumer* regarding an outstanding debt of some type." (David King Dep., Doc. 52-2 at 87–88 (emphasis added)).

Penn Credit's arguments to the contrary ignore the actual implications of the DDVM technology. First, the technology uses the target's "telephone number assigned to a . . . cellular telephone service" as an identifier, and the process will not work without such a number.[7] Second, the ultimate goal of the technology is to deliver a prerecorded message to the voicemail platform tied to the target's cellular number, which causes the target's handheld device to respond as though it had received a "normal" voicemail from a call to her *cell phone*. Thus, no matter how the prerecorded message gets to its final destination, there is a clear attempt to "get into communication" with a "telephone number assigned to a . . . cellular telephone service" via the target's voicemail platform, which is inherently tied to her cellular number.

Similarly, Penn Credit falls far short when it attempts to square the instant case with *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563 (W.D. Pa. 2017) (defendant not liable for TCPA violation where plaintiff forwarded free voice over Internet Protocol ("VoIP") calls to cell phone) and *Harper v. Credit Control Services, Inc.*, 863 F. Supp. 2d 125 (D. Mass. 2012) (defendant not liable for TCPA violation where plaintiff forwarded landline calls to cell phone). Specifically, Penn Credit asserts: "In each of these cases, like the instant case, the plaintiff's cell phone was implicated, if at all, only because the plaintiff did something to cause the cell phone to receive a communication

---

[7] In his declaration, David King stated:

> DDVM uses the consumer's cellular number to locate the consumer's Service Subscription Record within the Mobile Switch currently servicing that mobile account. Once located, Mobile Switch actions retrieve the FTN (i.e., the telephone number) assigned to the voicemail platform of the voicemail service provider that the cellular user has chosen, which the Mobile Switch then uses to establish a direct connection to the voicemail provider's platform.

(David King Decl., Doc. 35-1, ¶ 30(c)).

that was not initiated to the cell phone's assigned number." (Doc. 35 at 10). While Penn Credit's statement may be correct as to *Klein* and *Harper*, it fails to accurately portray Gurzi's conduct.

Here, Gurzi merely set up a voicemail platform on her cellular device. (*See* Angela Gurzi Decl., Doc. 52-1, ¶ 5). She did not purposefully take any action to cause her cell phone to receive communications that were not initiated to her assigned *cell phone* number or otherwise intend to create backdoor access to her voicemail platform. Setting up a voicemail box simply cannot be squared with forwarding calls from a VoIP service or landline number.

Moreover, the broader context of the statute as a whole supports the Court's finding that direct-to-voicemail messages fall within the TCPA. Courts have generally considered the TCPA to be a remedial statute that is to be construed in favor of consumers. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) ("The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls.") (citations omitted); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("The Third Circuit also reasoned that, 'in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers.'") (quoting *Gager,* 727 F.3d at 270)).

Additionally, when conducting a similar analysis regarding whether Internet-to-phone text messaging falls under the TCPA, the FCC stated:

> From the recipient's perspective, Internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the Commission has already confirmed falls within the TCPA's protection. And the potential harm is identical to consumers; unwanted text messages pose the same cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet. Finding otherwise—that merely adding a domain to the telephone number means the number has not been "dialed"—when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless consumers. !

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8020 (2015) (hereinafter "*2015 Declaratory Ruling*"), *decision set aside in part on other grounds by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Accordingly, finding that VoApps' DDVM technology is subject to the TCPA is in line with the TCPA's purpose, text, and legislative history.[8] Despite Penn Credit's arguments to the contrary, "[t]o hold otherwise 'would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted voicemail messages to wireless consumers.'" *Saunders,* 319 F. Supp. at 912 (quoting *2015 Declaratory Ruling*, 30 FCC Rcd. at 8020).

---

[8] This holding is consistent with this Court's holding in *Picton,* 2019 WL 2567971 and the holding in *Saunders,* 319 F. Supp. 3d at 912. In *Saunders*, the Court evaluated the same technology and determined that "direct-to-voicemail messages are a 'call' under the TCPA." *Id.* In a later opinion, the Court clarified that the TCPA applies to VoApps' DDVM technology. (*See* Doc. 56-1 at 3 ("As described above, the Court has already ruled—twice—that the [TCPA] applies to the communications used by Defendant in this case.")).

Further, at least one other district court has agreed with the *Saunders* decision. *See Dickson v. Direct Energy, LP*, No. 5:18CV182, 2019 WL 2396717 (N.D. Ohio Mar. 18, 2019) ("[T]he Court agrees with the Western District of Michigan's reasoning that ringless voicemails are attempts to communicate via telephone and that to hold otherwise 'would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted voicemail messages to wireless consumers.'" (quoting *Saunders*, 319 F. Supp. 3d at 911–12)).

**IV.  Conclusion**

In consideration of the foregoing, it is hereby **ORDERED** that Penn Credit's Motion for Summary Judgment (Doc. 35) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 30, 2020.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party